<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ELIZABETH AYLWARD, both Individually and as Executrix of the ESTATE OF PAUL J. AYLWARD, | : : : | Hon. Joseph H. Rodriguez: Civil Action No. 10-4799 |
| Plaintiff, v. WAL-MART STORES, INC. Defendant. | : : : : : | <u>OPINION</u> |

**RODRIGUEZ, J.**

Plaintiff, Elizabeth Aylward ("Plaintiff") brought this action as the executrix of the estate of Paul J. Aylward ("Aylward") and in her own right against Aylward's employer, Wal-Mart Stores, Inc. ("Wal-Mart"). Plaintiff alleges that Wal-Mart was negligent in requiring Aylward to work excessive hours and allowing him to drive home from work in an exhausted and fatigued state, which resulted in his fatal automobile accident. Presently before the Court is Wal-Mart's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. No. 9]. The Court has considered the written submissions of the parties and heard oral argument on the motion on March 30, 2011. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. For the reasons stated below, Wal-Mart's motion will be granted.

**I. Background**

Aylward began working as a store manager in Wal-Mart's Brick, New Jersey store in July 2008. (Am. Compl. at ¶¶ 11-12.) Soon after, he was transferred to the Mays Landing, New Jersey store, which was experiencing a litany of managerial problems.

(Id. at ¶ 13.)  Aylward was instructed to immediately remedy these problems and was told that his success would "make or break" his career at Wal-Mart.  (Id. at ¶¶ 15, 19.)  Aylward's scheduled shift was usually from approximately 7:30 a.m. to 5:00 p.m, but he typically worked longer hours because of the pressure to perform placed on him by his superiors at Wal-Mart.  (Id. at ¶¶ 19, 24, 26.)

      Shortly before the start of the 2009 Thanksgiving and Christmas holiday shopping season, Aylward was advised by his superiors that "Black Friday," November 27, 2009, would "make or break not only his store's profits for the year, but also the security of his job at Wal-Mart."  (Id. at ¶ 20.)  Concerned with an incident that occurred the previous year at one of Wal-Mart's New York stores where an employee was trampled by a crowd waiting to enter the store in the early hours, the company decided to keep all of its stores open twenty-four hours, from November 26 through November 27.  (Id. at ¶ 21.)  Wal-Mart informed all store managers that they were responsible for the crowds and any negative incidents that might occur.  (Id.)

      Aylward's scheduled "Black Friday" shift was from 7:00 a.m. on Thursday, November 26 through 5:00 a.m. on Friday, November 27; a total of twenty-two hours.  (Id. at ¶¶ 29-30.)  On Thursday, Aylward left his home at approximately 6:30 a.m., drove his daily hour-long commute, and entered the store at 7:49 a.m.  (Id. at ¶¶ 34-35.)  Aylward worked all morning until 12:20 p.m., when he left the store for a scheduled break.  (Id. at ¶ 36.)  Wal-Mart permitted employees to take a break during the afternoon so that they could have Thanksgiving dinner with their families.  (Id. at ¶ 37.)  Rather than drive the two hours round-trip to eat with his family, Aylward decided to rent a room at a nearby hotel and rest for a few hours in preparation for the long night.

(Id. at ¶ 38.)  At approximately 4:55 p.m., Aylward returned to the store and worked continuously through the night.  (Id. at ¶¶ 39, 43, 46.)  At around 9:20 a.m., Aylward left the store and began his commute home.  (Id. at ¶ 48.)  Approximately forty-five minutes into his drive, Aylward's vehicle crossed the center line of the highway and collided with a vehicle traveling in the opposite direction.  (Id. at ¶ 54.)  He sustained multiple blunt force injuries and ultimately died at the scene of the accident.  (Id. at ¶ 55.)

On September 17, 2010, Plaintiff brought this suit against Wal-Mart as the executrix of Aylward's estate and in her own right.  The Amended Complaint, filed on September 28, 2010, alleges causes of actions under the New Jersey Survival Act, N.J. Stat. Ann. § 2A:15-3 (Count I), and the New Jersey Wrongful Death Act, N.J. Stat. Ann. § 2A:31-1 et seq. (Count II).  [Dkt. No. 4].  Both claims predicate liability on a theory of negligence.  Plaintiff alleges that Wal-Mart placed extraordinary, unhealthy and dangerous physical and emotional demands on Aylward by pressuring him to work unreasonably long hours, and that these demands left him too exhausted and/or fatigued to safely drive home from work, causing his accident.  The gravamen of Plaintiff's negligence claim is that Wal-Mart, by requiring Aylward to work approximately twenty-one of the preceding twenty-six hours, had a duty to ensure that he was not too fatigued to drive himself home and to prevent him from doing so.  On November 18, 2010, Wal-Mart filed the instant motion to dismiss all counts for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  Standard of Review

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim upon which relief may be granted.  Fed. R. Civ. P.

12(b)(6). Under Fed. R. Civ. P. 8(a)(2), a pleading must contain only a "short plain statement of the claim showing that the pleader is entitled to relief." A plaintiff is not required to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). However, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to show the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (internal quotations omitted). The question is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007). Rather, to survive a motion to dismiss, "the complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. - - - , 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

To determine the sufficiency of a complaint, the Third Circuit has held that the Court must conduct a three-step test. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Next, the Court must separate the factual allegations from the legal conclusions. Id. at 1950. While the well-pleaded facts are accepted as true, legal conclusions are not entitled to the assumption of truth. Id. Last, the Court must determine whether the well-pleaded, non-conclusory factual allegations

"plausibly give rise to an entitlement for relief." Id.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  Therefore, the complaint must do more than allege the plaintiff's entitlement to relief; it must "show" such an entitlement. Fowler, 578 F.3d at 211. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n] that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  Ultimately, assessing plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S. Ct. at 1949).

### III. Discussion

Wal-Mart makes two arguments in support of its motion to dismiss.  First, Wal-Mart argues that Plaintiff's claims are barred by the exclusive remedy provision of the New Jersey Workers' Compensation Act, N.J. Stat. Ann. § 34:15-8.  Next, Wal-Mart argues that if the Act does not bar suit, Plaintiff fails to allege sufficient facts to establish that Wal-Mart breached a duty of care owed to Aylward.  Both arguments are addressed in turn.[1]

---

[1] A federal court sitting in diversity must look to decisions of the state courts of New Jersey when interpreting the scope of the  the existence of an employer's duty of care to protect employees from fatigue related injuries occurring outside of the course of employment.  Spence v. ESAB Group, Inc., 623 F.3d 212, 216 (3d Cir. 2010) ("As a federal court sitting in diversity, we are required to apply the substantive law of the state whose law governs the action") (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  In the absence of any controlling New Jersey State Supreme Court decision or an intermediate state court or federal court addressing the issue, the Court must turn to "analogous decisions, considered dicta, scholarly works, and any other reliable data

### A.     New Jersey's Workers' Compensation Act

Wal-Mart first asserts that Plaintiff's common law action is barred by the New Jersey Workers' Compensation Act, N.J. Stat. Ann. §§ 34:15-1 et seq. ("the Act"). Workers' compensation laws establish a tradeoff whereby employees who agree to the terms of the statutory scheme relinquish their right to pursue common-law remedies against their employers in exchange for immediate and automatic entitlement to benefits for work-related injuries.  Charles Beseler Co. v. O'Gorman & Young, Inc., 911 A.2d 47, 49 (N.J. 2006) (citing Laidlow v. Hariton Mach. Co., Inc., 790 A.2d 884, 886 (N.J. 2002)).  The overarching spirit of the Act is "to shoulder on industry the expense incident to the hazards of industry; to lift from the public the burden to support those incapacitated by industry and to ultimately pass on to the consumers of the products of industry such expense."  (Sheffield v. Shering Plough Corp., 680 A.2d 750, 760 (N.J. 1996) (quoting Morris v. Hermann Forwarding Co., 18 N.J. 195, 197-98, 113 A.2d 513 (1955)).  Accordingly, the Act "provide[s] a method of compensation for the injury or death of an employee, irrespective of the fault of the employer or contributory negligence and assumption of risk of the employee."  Harris v. Branin Transport, Inc., 711 A.2d 331, 336 (N.J. Super. Ct. App. Div. 1998).  Therefore, "[w]hen personal injury is caused to an employee by accident arising out of and in the course of his employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he shall receive compensation therefor from his employer."  N.J. Stat. Ann. § 34:15-1.

---

tending convincingly to show how the highest court in the state would decide the issue at hand."  Id. at 216–17 (quoting Norfolk S. Ry. Co. v. Basell USA Inc., 512 F.3d 86, 92 (3d Cir. 2008)).

The Act mandates that workers' compensation benefits are "the exclusive remedy for an employee who sustains an injury in an accident that arises out of and in the course of employment." Ahammed v. Logandro, 925 A.2d 733, 739 (N.J. Super. Ct. App. Div. 2007) (citing N.J. Stat. Ann. § 34:15–8). "Fundamental to the Act is the premise that by accepting the benefits provided by its schedule of payments, the employee agrees to forsake a tort action against the employer." Ramos v. Browning Ferris Indus., Inc., 510 A.2d 1152, 1155 (N.J. 1986). However, the exclusive remedy provision of the Act does not preclude a plaintiff from pursuing a common-law cause of action for injuries sustained in an accident that does not both arise out of and occur while in the course of employment. See Kristiansen v. Morgan, 708 A.2d 1173, 1180 (N.J. 1998).

The "arising out of" portion of the statute refers to the causal origin of the accident, and the "course of employment" portion refers to the time, place, and circumstances of the accident in relation to the employment. Valdez v. Tri-State Furniture, 863 A.2d 1123, 1128 (N.J. Super. Ct. App. Div. 2005) (Coleman v. Cycle Transformer Corp., 520 A.2d 1341, 1343 (N.J. 1986)). For an accident to "arise out of" the employment, it must be established that the work was at least a contributing cause of the injury and that the risk of the occurrence was reasonably incident to the employment. Coleman, 520 A.2d at 1344. An injury is considered "in the course of employment" if it occurs when the employer exercises a level of control over the employee's freedom of action. See Zelasko v. Refrigerated Food Express, 608 A.2d 231, 234 (N.J. 1992).

The Workers' Compensation Act defines the contours of the course of employment as follows:

> Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer; but the employment of employee paid travel time by an employer for time spent traveling to and from a job site or of any employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site or the authorized operation of a vehicle on business authorized by the employer.

N. J. Stat. Ann. § 34:15-36. This provision of the Act was incorporated by amendment in 1979 with the express purpose of limiting the scope of liability to injuries occurring on the premises actually controlled by the employer.[2] Brower v. ICT Group, 753 A.2d 1045, 1047 (N.J. 2000). The Act defines only two narrow exceptions to the general premises rule when employees are otherwise engaged in the direct performance of their employment duties. See Zelasko, 608 A.2d at 234. Thus, employees who "are where they are supposed to be, doing what they are supposed to be doing, are within the course of employment whether on- or off-premises, *except when they are commuting*." Jumpp v. City of Ventnor, 828 A.2d 905, 912 (N.J. 2003) (emphasis added).

---

[2] The Act as originally passed did not specifically define what constitutes the course of employment. Zelasko, 608 A.2d at 233. Without direction, New Jersey courts developed what is known as the "going and coming" rule, which precluded a worker from receiving benefits where the injury arose during routine travel to and from an employee's regular place of work. Id. However, rigid application of the going and coming rule resulted in many harsh results which led the courts to develop a myriad of exceptions to further the Act's remedial purpose. As a result, the exceptions quickly swallowed the general rule. The 1979 amendment was designed to "provid[e] genuine reform and meaningful cost containment for New Jersey employers from unjustified workers' compensation costs . . . by, among other things, sharply curtail[ing] compensability for] off-premises accidents." Jumpp v. City of Ventnor, 828 A.2d 905, 908 (N.J. 2003) (internal quotations and citations omitted).

Here, the allegation that Aylward's accident was due to work-induced fatigue arguably concerns an injury "arising out of" his employment. However, Plaintiff does not allege facts consistent with the conclusion that Aylward's accident occurred during the course of his employment. Aylward's accident occurred forty-five minutes after he left the Wal-Mart store while on his commute home. There is no allegation that Aylward was paid for his travel time nor that he was he using an employer-authorized vehicle to travel to a distant job site. In short, Aylward was not engaged in the direct performance of employment duties for the benefit of Wal-Mart at the time of the accident. As a result, Plaintiff is unable to seek redress through the workers' compensation system for Aylward's off-duty accident while commuting home. Therefore, the Act's exclusive remedy provision does not bar Plaintiff from pursuing a common-law cause of action.[3]

## B.  Duty of Care

Wal-Mart next argues that Plaintiff fails to allege any facts establishing the existence of a duty owed to Aylward. To sustain a cause of action in negligence, a party must prove that the defendant owed the plaintiff a duty of care, a breach of that duty, proximate causation, and damages. Polzo v. County of Essex, 196 N.J. 569, 584, 960 A.2d 375, 384 (N.J. 2008). Whether a duty of care exists, as well as the scope of the duty owed, are questions of law that must be decided by the court. Jerkins v. Anderson, 922 A.2d 1279, 1284 (N.J. 2007). "No better general statement can be made than that

---

[3]  Plaintiff also argues that if an employee is injured by an employer's "intentional wrong," the exclusive remedy provision of the Act does not bar the employee from seeking common-law remedies under N.J.S.A. § 34:15-8. Because Aylward was not within the course of employment when injured and his injuries are not compensable by the workers' compensation system, the Court declines to address this argument.

the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." Acuna v. Turkish, 930 A.2d 416, 424 (N.J. 2007) (citing Keeton et al., Prosser and Keeton on Torts § 53, at 356 (5th ed. 1984)).

In determining whether a duty of care exists, a court must first consider the foreseability of the risk of harm. J.S. v. R.T.H., 714 A.2d 924, 928 (N.J. 1998). Foreseeability, as it pertains to the duty of care owed, refers to "the knowledge of the risk of injury to be apprehended." Jerkins ex rel. Jerkins v. Anderson, 922 A.2d 1279, 1284 (N.J. 2007) (quoting Clohesy v. Food Circus Supermarkets, Inc., 694 A.2d 1017, 1021 (N.J. 1997)). That knowledge may be an actual awareness of risk or constructive knowledge if the defendant is in a position to discover the risk of harm. J.S. v. R.T.H., 714 A.2d at 928. "In some cases where the nature of the risk or the extent of harm is difficult to ascertain, foreseeability may require that the defendant have a 'special reason to know' that a 'particular plaintiff' or 'identifiable class of plaintiffs' would likely suffer a 'particular type' of injury." Id. (citing People Express Airlines, Inc. v. Consol. Rail Corp., 495 A.2d 107, 115 (N.J. 1985)).

However, "the ability to foresee injury does not in itself establish the existence of a duty." Piscitelli v. Classic Residence by Hyatt, 408 N.J.Super. 83, 113 (App.Div.2009) (citing Carter Lincoln-Mercury v. EMAR Grp., 638 A.2d 1288, 1294 (N.J. 1994)). "Once the foreseeability of an injured party is established, . . . considerations of fairness and policy govern whether the imposition of a duty is warranted." Carvalho v. Toll Bros. & Developers, 675 A.2d 209, 212 (N.J. 1996) (citing Carter, 638 A.2d at 1294). To determine the reasonableness of imposing a duty, the court must identify, weigh, and balance several factors: the relationship of the parties, the nature of the attendant risk,

the opportunity and ability to exercise care, and the public interest in the proposed solution. Jerkins, 922 A.2d at 1285. Ultimately, the reasonableness of imposing a duty is essentially an objective determination to be made on the basis of the material facts of each case. J.S. v. R.T.H., 714 A.2d at 928. "In weighing competing public policy concerns, courts must consider the real-life consequences of imposing a duty and cannot be oblivious of the social realities of the day. Thus, courts should be reluctant to impose a duty that society is unwilling to accept." Acuna, 930 A.2d at 424.

Plaintiff alleges that "Wal-Mart, as Mr. Aylward's employer, had a duty to ensure that Mr. Aylward (and its other employees) worked only such numbers of shifts and/or hours per day, week and/or months as were reasonable, safe and healthy." (Am. Compl. ¶ 17.) Plaintiff also alleges that Wal-Mart "had a duty to ensure that Mr. Aylward was not too exhausted and/or fatigued to safely drive home after his work, and had a duty not to allow Mr. Aylward to drive himself home." (Id. at ¶ 51.) In essence, Plaintiff argues that "when an employer requires an employee to work an excessive number of hours . . . the employer has a continuing duty to ensure the off-duty employee's safe passage home." (Opp. 18.) Therefore, according to Plaintiff, this duty of care attaches when the employer sets the employee's schedule.

Although not explicitly stated, Plaintiff seems to rely on the Worker Health and Safety Act, codified in N.J. Stat. Ann. § 34:6A-1 et seq., for the imposition of a duty on employers to schedule only shifts that are deemed reasonable, safe and healthy. The statute provides that "[e]very employer shall furnish a place of employment which shall be reasonably safe and healthful for employees." N.J. Stat. Ann. § 34:6A-3. The statute defines "place of employment" as "any building or other premises occupied by an

11

employer in or about which an employee customarily is suffered or permitted to work." N.J. Stat. Ann. § 34:6A-2(j). Thus, the plain language of the statute only provides for the extension of this duty to the premises of the workplace. To the extent that N.J. Stat. Ann. § 34:6A-3 arguably contemplates the imposition of a duty on employers to schedule only healthy shifts for their employees, that duty does not extend to the protection of employees while not on the premises. See, e.g., Ex Parte Shelby County Health Care Auth., 850 So.2d 332, 339–40 (Ala. 2002) (holding that an employer's statutory duty under a similar Alabama law to provide "reasonably safe working conditions at the workplace" extends "only so far as [employers] have control over the physical conditions of the workplace and the premises of the workplace" and does not require employers to "schedul[e] work hours for employees in an attempt to ensure their safety traveling home from work"). Merely scheduling or pressuring an employee to work long hours does not, in itself, give rise to a foreseeable risk of harm to an employee from fatigue related accidents occurring outside of the course of employment. Therefore, the duty imposed upon employers to provide a reasonably safe place of employment did not require Wal-Mart to schedule its employees' shifts in an attempt to ensure their safety from fatigue related injuries while traveling home from work.

However, it is generally recognized that one who engages in affirmative conduct and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another is under a duty to exercise reasonable care to prevent the risk from taking effect, regardless if the original conduct was not tortious. See Restatement (Second) of Torts § 321. Thus, Plaintiff also contends that even if the affirmative act of setting an employee's schedule or pressuring the employee to work

12

arduous hours does not necessarily impose a duty upon the employer to ensure the employee's after-work safety, a duty may arise when the employer actually becomes aware that the employee's work related fatigue has created a foreseeable risk of harm. However, Plaintiff does not cite any New Jersey authority recognizing the novel theory of liability advanced. Rather, Plaintiff relies on cases from other jurisdictions in which courts have held that an employer has a duty to avoid injury to third parties resulting from car accidents caused by fatigued employees while commuting home after working an excessive number of hours. See Robertson v. LeMaster, 301 S.E.2d 563 (1983); Faverty v. McDonald's Rests., 892 P.2d 703 (Or. Ct. App. 1995).

In Robertson, a nineteen-year-old employee worked at a railroad derailment site performing heavy manual labor for approximately twenty-seven straights hours. 301 S.E.2d at 565. After informing multiple supervisors that he was too exhausted to continue working, he was eventually given permission to go home. Id. The employee was visibly fatigued and while being driven from the derailment site to his car by a co-worker, the employee fell asleep in the passenger seat with a lit cigarette in his hand. Id. Thereafter, the employee began his commute home, fell asleep, and caused an accident. Id. The plaintiff argued that the employer was negligent because it "knew or should have known that its employee constituted a menace to the health and safety of the public." Id. The court noted that "[t]he issue presented . . . is not the [employer's] failure to control [the employee] while driving on the highway; rather it is whether the [employer's] conduct prior to the accident created a foreseeable risk of harm." Id. at 567. Guided by section 321 of the Restatement, the court stated that "[o]ne who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has

created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." Id. The court concluded that the employer's affirmative acts of requiring the employee to work over twenty-seven hours without rest, despite repeated requests to be permitted to go home and then driving the employee to his vehicle and sending him out onto the highway in such an exhausted state created a foreseeable risk of danger to the employee and others. Id. at 569.

Similarly, in Faverty, the employee was an eighteen-year-old high school student who worked three back-to-back shifts in a seventeen hour period before he asked to be excused so that he could rest. 892 P.2d at 705. The employer had a policy against high school employees working excessive hours and "was aware that at least two of its employees had recently had automobile accidents as a result of falling asleep while driving home from work." Id. at 709. Importantly, the employee "was visibly fatigued, and [the employer]'s managers were on site and saw [the employee] throughout that shift." Id. at 710. Accordingly, the court held that, under the facts presented, a reasonable jury could conclude that the employer knew or should have known that the employee's fatigued state created a foreseeable risk that he would be unable to drive home safely. Id.

The New Jersey Appellate Division recently considered an employer's duty to a third party injured by the conduct of a fatigued employee outside of the scope of his or her employment. Riley v. Keenan, 967 A.2d 868 (N.J. Super. Ct. App. Div. 2009). In Riley, an off-duty employee, while intoxicated, crashed his vehicle into the plaintiffs' vehicle. Id. at 871. In addition to seeking liability against the taverns who served the employee alcohol, the plaintiffs pursued a cause of action against the employer, alleging

that the accident was caused by the employee's sleep deprivation due to the excessive number of hours he was required to work by the employer. Id. The court stated that no New Jersey court has recognized a theory of liability predicated on work-related fatigue, but noted that "[e]lsewhere, it has been suggested that the imposition of such a legal duty should depend on . . . whether the employer's affirmative action has created a foreseeable risk that harm might occur once the employee is outside the scope of his or her employment, and whether the fatigue arose out of, and in the course of, employment." Id. at 874 (citing Gene P. Bowen, Note, Wherein Lies the Duty? Determining Employer Liability for the Actions of Fatigued Employees Commuting From Work, 42 Wayne L. Rev. 2091, 2103-04, 2109, 2115 (1996)). The court refused to impose a duty on the employer and distinguished the facts presented from those in Robertson and Faverty, noting:

> Nothing in the record indicates that company officials were aware of the number of hours of sleep [the employee] was getting in the time period leading up to the accident or that [he] was fatigued. In fact, there is no evidence that [the employee] ever asked to go home and was refused, or that he fell asleep at the job site before driving off, or that any of [the employer]'s employees had had automobile accidents while driving home after working long hours. And finally, unlike in both Faverty and Robertson, here there was an extended gap of some seven hours between when [the employee] left work and the accident, during which time he voluntarily became intoxicated.

Id. at 867. Although the court did not expressly adopt the reasoning of Robertson and Faverty, the court was clear that no duty of care arises to protect third parties from commuting employees unless the employer takes additional affirmative action, other than setting the employee's schedule, while possessing actual knowledge of the employee's fatigued state when the employee leaves the premises. See id.; accord Black

15

v. William Insulation Co., Inc. 141 P.3d 123, 130 (Wyo. 2006) ("Crucially, in both [Robertson and Faverty], the employer had actual knowledge of their employee's fatigued state."); Lesser v. Nordstrom, Inc., No. 96-8121, 1998 WL 480832, at *5 (E.D. Pa. Aug. 13, 1998) (finding that when an employee merely works greater hours than normal and when the employee did not appear tired or complain that she was fatigued, no foreseeable risk of harm arose which the employer had a duty to guard against pursuant to the logic of Robertson and Faverty).

Unlike in Robertson and Faverty, the Amended Complaint does not allege that Aylward complained of fatigue or informed a supervisor that he was too tired to continue working. There is also no allegation that any Wal-Mart employees observed Aylward in a fatigued state prior to leaving the premises. There is no allegation that Aylward fell asleep while at work. Rather, Plaintiff merely alleges in conclusory fashion that when Aylward drove home, Wal-Mart "knew and/or reasonably should have known" that he was in "an exhausted and/or fatigued condition." (Compl., ¶ 65 (e),(f).) Plaintiff contends that these allegations are sufficient to allow discovery on what Wal-Mart knew specifically with regard to Aylward's level of fatigue. However, the notice pleading standard articulated by Fed. R. Civ. P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S. Ct. 1937. Here, Plaintiff's allegations are nothing more than threadbare recitals of the elements of a cause of action, devoid of any factual enhancement to support the contention that Wal-Mart had any specific knowledge of Aylward's fatigue when he left the store Friday morning.

Even if the Court was to accept Plaintiff's allegation that Wal-Mart was aware

16

Aylward was exhausted to such a degree by his work schedule, there is also no allegation here of additional affirmative conduct by Wal-Mart, as in Robertson and Faverty, that would make it foreseeable that he may experience a fatigue-related injury outside of the course of his employment.  Plaintiff presents no case supporting the contention that mere knowledge of an employee's fatigue at the conclusion of a shift is sufficient to create a foreseeable risk of harm.  Although knowledge is critical, neither Robertson nor Faverty imposed a duty on the employer based on knowledge alone.  In both cases, the courts relied on additional employer conduct, such as driving the employee to his vehicle as in Robertson, or violating a corporate policy against allowing teenage employees from working excessive hours as in Faverty.

In addition, the present case is distinguishable from Robertson and Faverty because an employee, rather than a third party, is seeking to impose liability on an employer for injuries arising out of work-related fatigue.  As a result, the considerations of fairness and policy further counsel against the imposition of a duty.  See Carvalho, 675 A.2d at 212.  The recognition of a duty of care based on the facts alleged would upset the carefully crafted boundaries of employer liability for work-related injuries embodied in New Jersey's workers' compensation laws.  The Act seeks to compensate employees whose injuries arise from the conditions of their employment.  However, the remedial purpose of the Act must be read in a manner that is consistent with the concept of control that is embodied in the course of employment requirement.  See, e.g., Livingston v. Abraham & Straus, Inc., 543 A.2d 45, 53 (N.J. 1988).  An employer is absolved from liability for compensation under the Act for injuries occurring outside of the course of employment largely because of the attenuated degree of control the employer has over

17

the employee, especially while the employee is commuting. The imposition of a duty upon an employer for injuries sustained by an employee, arguably arising out of the fatiguing conditions of employment, yet occurring outside of the course of employment would alter the necessary balance struck by the New Jersey legislature when defining the scope of compensable injuries.

## IV. Conclusion

There is no sound basis in New Jersey law for imposing a duty of care upon an employer to protect one of its managers from the hazards of driving while fatigued, when the only affirmative conduct taken by the employer was to pressure the employee to work twenty-one hours in a twenty-six hour period. Therefore, Defendant's motion to dismiss will be granted. An appropriate Order shall follow.


Dated: June 9, 2011

                                          /s/ Joseph H. Rodriguez
                                          Hon. Joseph H. Rodriguez,
                                          United States District Judge